You can proceed. May it please the Court, Your Honor, I'm Michael Veron, and together with my partner Peyton Palicki, we're here on behalf of Billy Van Winkle. Billy was traveling on Interstate 10 behind a tractor-trailer when a recapped tire unraveled. The shrapnel, the recapped tread that had separated and come apart, hit his car, caused a serious crash that resulted in his car being undriveable and had to be towed from the scene. And he was seriously injured and had to be taken to the hospital in an ambulance, where the- What were the nature of his injuries? Ultimately, he required spinal surgery. The medical records, Your Honor, say that he was bleeding when he arrived at the hospital. In any event, according to the ruling below, a party can breach its duty to preserve evidence and not only face no consequences, but win its case without a trial. In order to reach that result and arrive at such a result, you have to employ a double standard. First, you have to set the bar for the plaintiff impossibly high. And you have to hold that the plaintiff has to prove his case with the destroyed evidence, which is manifestly impossible. Secondly, you have to lay the bar for the defendant on the ground. And you have to say that the defendant can create a genuine issue of material fact and defeat the plaintiff's motion for a partial summary judgment by merely alleging that the accident could have been caused by a road defect. Now, there are two things very clearly wrong as a matter of law with that ruling. Number one, it ignores the fact that the other cause, the road defect, was an affirmative defense for which the defendant bore the burden of coming forward to create an issue of fact, not the plaintiff. Number two, you have to ignore the court's own finding that not only did the defendant breach its duty to preserve the evidence, but it also came forward with no evidence whatsoever of a road defect that could have been a cause of the accident. Indeed, the state trooper who was at the scene noted no road defect. So we're obviously asking the court to reverse the summary judgment, dismissing Billy's case in its entirety, and we're also asking the court to reverse the denial of Billy's motion for partial summary judgment and thus remand the case for a trial on quantum. In connection with that, I would like to call the court's attention to a statement at page nine of the defendant's brief, and paraphrasing as best I can. I don't have the quote memorized. They say that it's well recognized by the courts that under normal circumstances, a tire will not come apart absent negligence. That is a nail in the coffin for the ruling below. Finally, I'd like to call the court's attention to a case that we cited in our reply brief, but in hindsight I think we should emphasize even more. Prior to this case, the rule in the Western District of Louisiana for any kind of evidentiary shenanigans was set forth in a case called Lewis, L-E-W-I-S versus Darce Towing, and that case was decided in 1982 by a colleague of Judge Davis's on the Western District of Louisiana bench at the time. That was a wrongful death case in which, after filing suit, the plaintiff hired his forensic pathologist to exhume the body of the decedent and conduct an ex parte forensic examination, post-mortem examination. When the defendants learned of it, they filed a motion with the district judge asking that any and all testimony or evidence from that ex parte examination from which they were excluded be held inadmissible. The district judge granted that and said that it was vital to protect the integrity of the fact-finding process in federal courts that the playing field remain level. He granted that, and until this case, that was really the rule in the Western District and one would hope throughout the country because, in fact, Lewis versus Darce Towing has been cited more than 20 times by courts throughout the country. This has the unfortunate appearance of allowing a party to benefit from its own wrongdoing and win its case by destroying evidence. Well, counsel, you certainly had these arguments in front of the district judge. The district court looked at it. You want to cast all sorts of aspersions at the defendant that may be justified, but the district judge looked at that, and he saw it was collected in one place where the accident occurred. You know the facts better than I do, taken off to Salt Lake or whatever, and through inadvertence was destroyed. Well, very suspicious looking, but the judge looked at all that. So you want whenever evidence is destroyed, it seems to me, that a district judge will always abuse his discretion if he makes a fact-finding that this was not in bad faith or are you saying bad faith is irrelevant, the mere act is enough, that the defendant destroyed the usability of the evidence? Well, that's a good point, Your Honor, and other circuits don't require bad faith. And why? Because it doesn't make any difference to the plaintiff. The prejudice is the same. Does our circuit require bad faith? Fourth Circuit, for instance. Does our circuit require bad faith? This circuit has, and if—I think it sets an impossible burden. So are we stuck with that? Well, I think you ought to revisit it. Well, we can, but if that is the rule of the circuit, this panel has to follow it. It's not the rule of Louisiana state courts, and this is a diversity case. And in state courts, there's clearly an adverse inference, and clearly you don't get to benefit from your own wrongdoing. And I will say this, too. If this is not bad faith, then I think the court needs to simply say there is no duty to preserve evidence anymore because the duty is unenforceable. What's your evidence of bad faith? What you have is just a circumstance. I'm saying it doesn't matter, Your Honor. Well, no, you are saying it doesn't matter. They had a claim file. Go ahead, counsel. I'm sorry, Your Honor. They had a claim file. They instructed him at the scene. This is a national trucking company that has thousands of trucks on the road every day. They are not a neophyte. They understand about trucking accidents and how they give rise to liability and claims. When you damage other people, you become liable. The oldest rule of law in Louisiana, Your Honor, has come down to us from the Institutes of Justinian. In Article 2315 of the Civil Code, it says, and I quote, every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. Counsel, are you saying those rules apply in federal court? Yes. In a diversity case, we have to apply Louisiana procedural rules on spoliation of evidence? Well, is it a procedural rule or is it a substantive rule? I know the rub is this. It causes a serious prejudice. How do we explain to the man on the street that a defendant can destroy evidence? And that was a deliberate act. They didn't accidentally. They sent those tire fragments there. They didn't just lose them. They sent them off with other tire fragments after they had a claim file, after they told the driver at the scene when he reported the accident. From the scene, they said collect the tire remnants. Now, they weren't just doing that because of their observance of litter laws. You cannot drive Interstate 10 two miles without seeing these recapped tire treads everywhere. They are prone to failure. Counsel, this is a three-judge panel, not a six-member jury. Will you kind of get back to the law here? Well, Your Honor, I suggest to you, I'm not going to quote Mr. Bumble and Oliver Twist when he says what the law says, but if the law says that this defendant can escape all consequences and win its case by the destruction of evidence, you might as well give both sides a six-shooter and send them out at high noon because we've lost the integrity of the process. Lawyers and people who are in litigation in federal court need to understand the importance of the integrity of fact-gathering to uncover the truth. And if we lose control of that and dismiss this out of hand, I think the consequences are very real. But I will ask you this, Judge. If the court does that and says that Lewis v. Darce towing is not good law anymore, I would at least ask the court to make sure it publishes the opinion because I think bench and bar across the circuit need to know that the game has changed. Let me ask you this. Is there anything in the record about what happened when the truck got back, whether some hand just went in to routinely clean the truck up to get it ready to go back out or whether some discussion was held with the driver or with management? No, there's no innocent explanation. They had a claim file open, and this happened six weeks later. When you tell them bring the tire fragments and we're opening a claim file, I don't know. We can't get inside that company. But I will say it begs the question, too, which is do we have to have the tire? They said in their deposition, Stephen Field and Mr. Cantrell, I forget his first name, both said there are only two explanations for what happened. Either there was a road defect and the court said there was no evidence of one or the tire was poorly made, and they made the tire. The tire had barely half of its expected life. It had 40,000 miles, and they testified that it should have been good to go for 70,000 miles. And they explained, well, you know, those are the only two explanations that exist for the recaps coming apart. Companies choose to save money by recapping their tires, but they're prone to failure. And this is like the Pinto case. If you want to save money but you're going to raise the risk of danger to harm people, then justice demands that you assume that risk and you compensate them and make them whole. Billy Van Winkle, it's undisputed, did nothing to cause this. Billy Van Winkle deserves justice. But he at least deserves a trial. And I don't know this, this court has used the man on the street test in recusation cases because I've had a recusation case. And you have said that if it can't be explained or if it looks bad to the man on the street, the circumstances of the case, then a judge should recuse himself or herself. I would suggest to you here this case fails the man on the street test because this doesn't look good, doesn't look good at all, and it's unfair. And sometimes you have to look at things globally like that. If we manipulate legal rules to produce an unjust result, what's the point of the rules? So unless you have any further questions, I'll yield the rest of my time. All right, counsel, you'll have time for a vote. Thank you, Your Honor. Good morning, Your Honors. My name is David O. Quinn. I'll be representing the defendant's appellees. He has a fair point. It's said with some emotion. Yes. This is an abuse of discretion review, it seems to me. The points as I see them at some point are saying there's an argument that the wrong test was applied, that some Louisiana-specific rule, procedure, or otherwise should apply. Getting to Judge Davis's question, is there any evidence that your client came up with that says what happened? Yes, there is, Your Honor, and it's clear what happened. There was an accident. The driver was instructed to take the scraps of the tire and put them on the truck. He did. Now, was it clear that the purpose of that was to preserve them in order for future examination? I don't know that that's in the record, and I can't say yes. They did ask him to save the truck, the scraps. The truck was out in the country doing truck business. It drove 1,600 miles and eventually ended up in the new prime facility at Salt Lake. What conceivable purpose was there for putting the scraps on the truck at the scene if it wasn't, as Judge Southwick asks, to preserve it? I mean, it probably was to preserve it, but what happened was— So can we pause there for a second? We understand what happened. We've read the record. We've read your briefs carefully, so I understand what happened. My question is, if, to answer to Judge Southwick's question, the purpose was to preserve it, and then within 40 days and 1,600 miles it was transferred to be destroyed, what conceivably innocent explanation for that could you offer us? The only one I've seen in the deposition transcripts is, well, end of the useful life, we just recycle truck tires. That's kind of what we do. But I've not seen a single explanation for why one would recycle a truck tire that was involved in a serious accident where the truck driver specifically saw the man loaded into the ambulance, is on the phone, what should I do, what should I do? And as I think you just agreed with me, he's instructed to pick it up to preserve it, not to transfer it for 40 days, 1,600 miles to Salt Lake to be destroyed. I don't understand what conceivably innocent explanation there could be for that course of conduct. Somebody screwed up when it got to Salt Lake. And how is that their fault to lose at summary judgment? That's the thing that doesn't make any sense. It's like, okay, fine, I get it. Mistakes are made. It's a big company. I'm sure this is not the first time it's happened. But it just seems really odd to say, well, therefore, this key piece of evidence being deprived to you, you don't have anything to survive summary judgment, sorry, you lose. Well, the trial court, as Judge Southwick pointed out, looked at all this. And the legal standard, although they're trying to get you to change it in this circuit, is that you've got to show bad faith. You have to show more than a mistake. You have to show more than negligence. You have to show that the tire was destroyed because we felt it would be adverse to our case. And the judge said there's nothing like that in this record. That is highly speculative. Did the judge have an evidentiary hearing on this or was this all on the papers? I don't remember. I wasn't involved in the trial, so I can't fully answer that. I know it was extensively briefed. You've read the record, haven't you? I have, Your Honor. And I don't recall that there was a hearing. I think it was on the papers. That's all I remember. So this is like a summary judgment finding then? Well, it's a fact finding. Well, you can't make a fact finding on the papers, can you, when there's a dispute? I think you can. I mean the judge was acting according to his inherent authority. There's no cause of action in Louisiana for spoliation. And this court has ruled that it's an abuse of discretion to allow evidence of loss or destruction of evidence to prove an element of a claim unless there was bad faith. We're not here arguing whether there was a spoliation cause of action and whether there was negligence because it would be a different situation potentially. We're arguing whether that evidence rises to the level of bad faith, meaning more than a mistake, meaning more than a bobo, meaning more than a miscommunication, meaning we look at this tire and said, uh-oh, we're going to get sued. Let's throw it away. But there's nothing like that in this record, and that's the standard applied by this court. What it would take, you'd have to show evidence that somebody made an intentional decision to throw the tire away to screw this plaintiff's case up? Yes, Your Honor, and those cases are extensively cited in our original brief and in our SIR reply brief. The facts that support an inference of bad faith are, one example that comes to mind from the brief, I'm about to start a new company. I know I'm going to get sued for unfair trade practice, so I tell my buddies that are starting a company with me, let's delete all the e-mails so they can't get them. That was an instance in which bad faith was found. I would like to point out while it's still in my mind. In regards to the case you're talking about, it seems to me if you're looking for bad faith, the circumstantial evidence of bad faith would be, if it's accepted by the fact finder, that the tires get to some location and the company has no explanation as to why they were destroyed. And it sounds to me like you're saying that's where we are, that the company had no explanation for what happened. I disagree with that respectfully, Your Honor. Were there affidavits from the people who were involved up there? I mean, is there firsthand knowledge being sworn to? Yeah, I'm the driver. I parked it here. Some fool came and must have come and grabbed the stuff. I mean, what is the firsthand evidence of what happened? The guy who was in charge of retreading tires at Ecosystem talked about the procedures, and the procedures are when the truck is checked in, they look at it, and they've determined this is a busted tire, and they threw it away. The evidence supposes the expert… He's just talking about procedures. So there's nobody with firsthand knowledge of what happened to the scraps. I disagree with that respectfully, Your Honor. No, I'm asking because you responded with what the driver said is the normal procedure. Did anybody provide evidence firsthand, I did it or I saw the person did it, who did it, or something like that? No, Your Honor. What the evidence was is that the truck got to Salt Lake and it was thrown away upon checking into the station and being refitted to be sent back out. It's totally an inadvertent, ordinary course of business. If there had been no lawsuit, the same thing would have happened. There's no evidence that anybody looked at it. I'm sorry, I'm sorry. I beg your pardon. Was that an affidavit that made those assertions? It was in a deposition, and it was attached to the motion papers. That was a deposition of what their usual procedure was. That was a statement of what their usual procedure was. Correct, Your Honor, and there's no evidence whatsoever that that usual procedure was disregarded because of this lawsuit or because of the claim that had been filed or because there was an accident and the driver went to the hospital. There's no evidence that anybody in Salt Lake said, wow, there's an accident, there's a claim, I better get rid of this. Counsel. It was purely inadvertent. What is New Prime's policy for tires that are involved in accidents that send drivers to the hospital? What is the policy, and where is the evidence in the record? You told me earlier that the purpose of picking it up off the highway is to preserve it. So what is the preservation policy at New Prime? Well, I said, Your Honor, with respect, that it was conceivable that that was the purpose. I mean, they told them to pick it up. What would be a different – fine. What's a different purpose? As I understand it, the policy varies depending on the situation. If the lawsuit's filed, I think there are more stringent things. Okay, and what are the more stringent things? Go out and get it. Go out and find it. Where is that in the record? I don't know. And where is the preservation in the record? Where is the policy that says we as a company, when we recap tires and they end up hurting people, we preserve them so that they can be properly put before a court in whatever way that the plaintiff chooses to do it? Where is that written in the record? There was testimony that it's basically a case-by-case thing, and if there is a lawsuit filed, they'll preserve evidence. And they did ask the driver to put it on the truck. But I know I'm being redundant. I refer, Your Honor, to the back end. There's nothing that says that – nothing in the evidence, nothing in the record that says that this was nothing more than a mistake when the truck finished its journey and was thrown away. Do you have the equivalent of, like, an evidence room in Salt Lake? Like, is it possible that in Salt Lake you have the tires that are just like, oh, these need to be taken off and they've ended their useful life, and we put those over here in pile A? But, you know, for the ones that, like, hurt people, send them to the hospital, and they end up with tens of thousands of dollars in medical bills, we put those in column B or in room B, and those can be preserved for expert depositions and testimony. Is that how it works in Salt Lake? I don't think so, Your Honor. I don't think there's anything like that. So why did it go to Salt Lake? Because that was the facility that the trucks are refitted to go back out. I'm not a trucker, obviously, but, I mean, they go there and they're cleaned up and they put the oil in them and they check them and whatever they need to do, and in that process the tire was thrown away. But you're not offering any evidence in the record or otherwise for an innocent explanation for how it can – I mean, to judge – I'm basically where Judge Southwick started this entire discussion with you, which is you could come forward and say, listen, we took it to Salt Lake because it was supposed to go into this preservation locker and that's what we do because we take seriously our obligations to the people that we hurt on the highways of America. But Joe, this guy Joe, you know, inadvertently picked it up and put it in the thing and it got recycled and we're really sorry. That would be a totally different case, but you don't have any of that. What you're telling us is we know nothing about what was supposed to happen in Salt Lake, we don't have any preservation policies, it's case-by-case determination, we instructed the guy to pick it up off the highway for reasons that can only be explained from preservation, and now it's gone and too bad, too sad, you lose, which is not very – that's not a very good summary judgment argument. Well, with respect, Your Honor, the law is that they have the burden of showing that we threw this tire away because we knew it was adverse to our position, not because it was going to be used in a lawsuit or not because of that. And the evidence on that is it drove to Salt Lake City and in the ordinary course of business, as the truck was being refurbished, refitted to be sent back out again, somebody threw it away. That's the evidence, and the court looked at that evidence and said that's not bad faith. It may be negligence, it may be a mistake, it may be untoward, but it's not the kind of bad faith that the court under its inherent powers would say because you threw this evidence away, because you knew it was bad for you, I'm going to instruct the jury to assume it was bad for you. And that's the showing required in this circuit. Counsel, I have a question about that because we're not – this isn't a jury trial. This is Rule 56, summary judgment. They don't have to prove anything. They have to create a material dispute of fact, and they say what is the innocent explanation? You've heard three of us ask you this morning, and we're struggling to figure out the innocent explanation. You say, well, it was just negligence. That's great. That's why we have material disputes of fact, and that's why we have juries in this country, is that you can make all of these arguments to the 6 or 12, as Judge Southwick was alluding to earlier, and your friend on the other side can do the same thing. But what you can't do is, as a matter of law, say we're pre-permitting all of this and new prime wins. You see, like I hear you on what it takes to prove the bad faith, but all they need to do, all inferences in their favor, right, that's part of the Rule 56 standard, is say material dispute of fact. So why is that wrong? Let's talk about that. The fact that the tire was thrown away proves nothing unless it was thrown away because we knew that it was adverse to our position. That tire could have exonerated us. It could have shown nothing. It could have had a giant spike in it. So you're assuming that the tire was against us, and that's why you need bad faith. Let's take that on a Rule 56 inference analysis. The fact that the tire was thrown away does not create an inference that it was defective unless we threw it away because we thought or felt or believed it was defective. That's why, even if this had gone to the jury, I think we still do Rule 56. I don't think you get to the jury. I think that when the trial court found, under an abuse of discretion standard, that there was an innocent explanation, that it had been inadvertently thrown away, that maybe it rose to the level of negligence, maybe they could have done better. But the trial court said that's not what I'm directed to do. I'm directed to find whether that showing rises to the level that they knew it was bad and threw it away. I suggest a bobo in Salt Lake, however uncomfortable it may make you feel, is not bad faith. And that's what the trial court found. But taking it a step further to your question, the fact that it was thrown away doesn't prove it was defective. It only proves it was defective if we threw it away because it was defective. And that's why you get the inference, and that's the law in this circuit. Let me ask you this. The trial court also said that at trial the jury could decide whether an inference should be drawn against you for throwing away the tire. Now, what kind of sense does that make? And then turn around and grant summary judgment. Well, I don't think the trial court should have said that. I think there should have been – once there was a finding of no bad faith, I think that should have been the end of the story. This court has ruled it's an abuse of discretion to allow evidence of destruction of evidence to prove an element of claim absent of showing a bad faith. So I think the trial court should have stopped there and not made those additional comments. But I'll let you put it in front of the jury. But then the trial court took up the summary judgment too. And it considered all this stuff about, well, the tire was blown and you threw it away, and it granted summary judgment. And I suggest it did so because the loss of the tire doesn't prove anything absent bad faith, which the trial court, under an abuse of discretion standard, found was lacking in this case. It said the inference – You're helping me understand this, but let me ask you at that point, which is just a little bit of a tweak on what Judge Davis asked you. If it could go to the jury, if it's not no genuine dispute of material fact as to whether there's bad faith, it would arise from inferences. And the inferences would be the things we've talked about. And there's no more evidence we need to worry about because summary judgment is supposed to collect all the evidence. So based on the evidence that we have, could inferences have been a proper jury instruction? You may – here's fighting over jury instructions. If the jury infers based on the evidence that there was bad faith, here's what you can do. Is it correct, is my understanding correct, that we would have to find there's not enough here for a reasonable jury to infer bad faith? Or is there something else that even prevents us from getting to that question? There's not enough here for it. Well, there is something else, and that's once the trial court determined there is no bad faith, it should not go to the jury. But taking that hypothetical, there's not enough evidence to conclude it went to bad faith. But it is a fact question, and you're just saying there's not enough here to give that fact question to the jury. Correct. I mean, all the evidence is it got to Salt Lake 1,600 miles later in the trucking bay and was thrown away by somebody who didn't know what had happened before. It was a mistake. There's really not evidence of that, as I understand it, that what really happened when the truck got there. You've got evidence of what the usual procedure is, but there's no direct evidence of what happened when the truck got to the terminal. Assuming that's true, we win because there's no evidence. I mean, you're speculating that somebody did something untoward when it got there, and there's no evidence of that, untoward in the sense of I'm going to get rid of this tire because I don't want it to be in this lawsuit. Well, you had a motion to produce, I assume, or something equivalent to that, to produce a tire, and that was your explanation without any evidence. Well, the manager of the company gave that testimony. Of the usual practices. And there's nothing to indicate that that usual practice wasn't followed. He was questioning, did anybody inspect it? Did anybody analyze it? No, we just threw it away when it got there. There's no indication that anybody went out, no indication anybody told this guy to throw it away, no indication anybody looked at it and said, oh, man, we better get rid of this. All the evidence is that it just got thrown away when it got to Salt Lake because somebody didn't know what had happened before. Let me ask you about this truck. Why was the truck in the area of the accident and what was it doing? Was it only going back to Salt Lake or did it have other missions for the company on the way back? My understanding is it had other missions to accomplish. Did it have a load? I don't understand exactly what this truck is. Was it a tractor-trailer rig full of freight and it was dropping it off on the way and the tower was supposed to stay on the truck? That's my understanding, Your Honor. I mean, I don't have a lot of details about what stops it made, if any, but it continued on its journey and ended up at Salt Lake, which is where our facility is, and where the trucks are refitted, refurbished, et cetera. May I? I only have a minute 40. I would like to make one other point that they didn't raise, and it's one paragraph in their brief, but it's a large part of the trial court's ruling, which is this manufacturing defect theory was raised for the first time in opposition to our summary judgment seeking dismissal of the negligence claims. Really quickly, they filed the suit in 2019. Two years later, we filed our summary judgment. Their claim was that the driver negligently operated and maintained the truck, didn't have the tires right, didn't do this, didn't do that. We filed a motion for summary judgment saying you can't prove that. They went in and asked for more time. They said, no, we need more time, blah, blah, blah. The trial court gave it to them, pushed the trial back to almost a year, let them do more discovery, let them extend their expert report deadline. They amended their complaint. The operative complaint pleads a negligence claim against the driver and a negligence claim against New Prime, the owner-operator of the truck. It's all negligence. The trial court quoted. There's language in that complaint that says that they sued you as a manufacturer and they also alleged that the tire was defective. They have language in the course of their complaint, and the trial court quoted all of the allegations in its ruling. It's in the record excerpts in the trial court's ruling, and it's in the record on 4432 to 4436. You failed to maintain, you failed to supervise, you failed to do that. Yes, if you want to take a sifter, they do say it's unreasonably dangerous, but they don't say why. They don't say it varied from the composition or construction. Don't they mention defective tire also? They say that we failed to notify of an unsafe or defective condition, but it's in the context of a negligence claim. Is the word unsafe in there? Yes. Is the word defect in there? Probably. But nowhere in there does it say the tire was defective because it varied from the construction and composition under the LPLA. That's out there too. I appreciate the court's attention. I'm out of time. Do you have any more questions, gentlemen? Thank you, Counsel. Thank you, Your Honors. I jotted some notes to hopefully address the things you want in the limited time I have, Your Honors. First of all, I've done a poor job in that I've allowed us to mesh the issue of bad faith from the issue of the inferences to be drawn. Bad faith is only relevant for sanctions. I'm less interested in sanctions than I am in Billy getting a trial and in the proper application of the law of summary judgment. I think we need to look at those differently. I don't think the court has ever held that you have to show bad faith in order for inferences to be drawn from the loss or destruction of evidence. I think it's also important they're mischaracterizing a lot of what the district judge said. He said in his ruling on sanctions that the destruction of the tire was intentional.  I'm rapidly going through. A case can be proven by circumstantial evidence. That's what the plaintiff is necessarily left with when a party destroys the direct evidence that is vital. The judge also said, and I think it's important, he said, I find that the defendant breached their duty to preserve evidence. So we're left with the non sequitur that you've breached your duty to preserve evidence, but that means you win your case. And that's just something I can't wrap my arms around. And unless you have any additional questions, I won't take any more of the court's time. All right, counsel. We'll take the time back. Thank you very much, Your Honor. Thank you both for bringing this case and your arguments to us today. I'll call the third case.